**Anthony Scott TYRA, Plaintiff,**

v.

**Edgar B. HARGER, Sheriff; Lieutenant Dave Heath; and Deputy Lee Burnett, Defendants.**

**No. L 83–57.**

United States District Court,
N.D. Indiana,
Hammond Division at Lafayette.

May 25, 1984.

Anthony Scott Tyra, pro se.

J. Frederick Hoffman, Lafayette, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

■ This action was filed pursuant to 42 U.S.C. § 1983 by a former pretrial detainee of the Tippecanoe County (Indiana) Jail against the Tippecanoe County Sheriff (Harger) and two of his subordinate officers. Jurisdiction is predicated on a federal civil rights question under 28 U.S.C. §§ 1331 and 1343(3), (4). The matter is presently before this court on defendants' motion for summary judgment. Plaintiff having been afforded ample opportunity to respond to said motion, this case is now ripe for ruling.[1]

1. At page two of defendants' motion for summary judgment, defendants set forth the following admonition:

NOTICE TO PLAINTIFF

You will note that the Affidavits of Edgar B. Harger, Ruth Shedd, J. Frederick Hoffman, David Heath, Daniel Cordell, and Lee Burnett, are attached to this Motion. Any factual allegations contained in these affidavits attached thereto as exhibits will be accepted by the district judge as being true in ruling on the Motion for Summary Judgment unless you submit affidavits or other evidence contradicting such factual allegations. Such affidavits are filed and ruled upon pursuant to Rule 56(e) of the Federal Rules of Civil Procedure which read as follows:

"(e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be atached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Notwithstanding the above, plaintiff has filed nothing in opposition to defendants' motion for summary judgment in the intervening three months. Accordingly, this court must deem any and all factual assertions contained in defendants' supporting exhibits and affidavits as being uncontroverted. *See Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982).

### I.

Before proceeding to an examination of the merits of defendants' motion, this court must first address itself to a pending motion for appointed counsel filed by the plaintiff. *Brown-Bey v. United States*, 720 F.2d 467, 471 (7th Cir.1983); *Emory v. Duckworth*, 555 F.Supp. 985, 987 (N.D.Ind. 1983).

In *Wickliffe v. Duckworth*, 574 F.Supp. 979 (N.D.Ind.1983), this court set out the criteria for evaluating requests for appointed counsel under 28 U.S.C. § 1915(d) in the following language:

There is no constitutional right to appointed counsel in a civil case. *Thomas v. Pate*, 493 F.2d 151 (7th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). Rather, the decision whether to appoint counsel in a case rests within the sound discretion of the court. *McBride v. Soos*, 594 F.2d 610 (7th Cir.1979). When considering motions for appointed counsel, this court is guided by the standards set forth in *Maclin v. Freake*, 650 F.2d 885 (7th Cir. 1981). These standards include, but are not necessarily limited to, such considerations as the legal and factual merits of the claim presented, the degree of complexity of the issues involved, and the movant's apparent physical and intellectual abilities to prosecute the action. See also, *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.1983); *McKeever v. Israel*, 689 F.2d 1315 (7th Cir.1982). This court is also mindful of a point not often made in these matters, and that is that the operative word in 28 U.S.C. § 1915(d) is "request", not "appoint", i.e., "[t]he Court may request an attorney to represent any such person unable to employ counsel." See David Ashley Bagwell, "Procedural Aspects of Prisoner § 1983 Cases in the Fifth and Eleventh Circuits," 95 F.R.D. 435, 443 (1982)

574 F.Supp. at 982.

Applying the above to the facts of this case, this court concludes that plaintiff is not entitled to counsel. A careful examination of the pleadings compiled to date reveals the absence of any colorable merit, legal or factual, to plaintiff's claims. Further, this court had the opportunity to observe the plaintiff at an evidentiary hearing and pretrial conference held in this matter on October 19, 1983, and found him to be both physically fit and reasonably articulate in advancing his claims. Finally, this court notes the apparent lack of interest manifested by plaintiff in the prosecution of this action over the preceding six months. Notwithstanding both this court's express order (issued orally at the hearing of October 19, 1983) that plaintiff was to respond to defendants' summary judgment motion by April 2, 1984, as well as defendants' admonition at page two of their motion, plaintiff has failed to comply therewith in any fashion.

Accordingly, plaintiff's request for counsel is hereby DENIED.

### II.

Plaintiff, Anthony Scott Tyra, is now serving sentences for burglary and theft within the prison system of the State of Indiana. Although he has been confined in the Tippecanoe County Jail on at least fifteen occasions since he became 18 years of age, he is complaining of a single, isolated incident during a period of incarceration which began on March 14, 1983 and terminated on June 6, 1983.

In his complaint filed on May 27, 1983, plaintiff alleges the following:

Allegation 1. "I was picked out of a crowd of people and locked up".

Allegation 2. "There was statements signed by those other individuals that confessed to same said crime and was willing to take same consequences for crime."

Allegation 3. "Still I alone was locked up for crime."

At the hearing and pretrial conference, plaintiff admitted that he confessed to the disciplinary charge on which he was convicted, but stated that others were guilty of the same offense and only he was punished.

It appears that a disturbance broke out in plaintiff's cell block as the prisoners were being placed back in their cells after the noon meal on April 15, 1983, at about 12:15 P.M. Plaintiff and a few other inmates tarried in returning to their cells, and plaintiff was observed holding the sliding door open so that it could not be closed. He was ordered by the jailer to release the door but refused. The sergeant on duty, Dan Cordell, was called to the scene and succeeded in getting the prisoners to return to their cells. Sgt. Cordell then told plaintiff that charges would be placed against him. This resulted in a tirade of obscenities from plaintiff. Sgt. Cordell on the same date (April 15, 1983), filed charges as a result of this incident. In his Answer to the Request for Admissions, plaintiff admits that it is true that he was charged with violations of five jail rules, three major and two minor. They were set for hearing at 4:00 P.M. on April 16, 1983, more than 24 and less than 72 hours later. Plaintiff signed an acknowledgment of receipt of a copy of the charges, which spelled out his rights as he has admitted in his Answers to the Request for Admission. The hearing took place before Sgt. Heath who had not been involved in the incident. Plaintiff was present and pled guilty to two charges: (1) Insolence toward a staff member; and, (2) blocking a locking device. He also presented letters of three other inmates which were placed in the record. He was found guilty of only one charge: blocking a locking device, Major Rule # 15. The Results of Hearing Section of Disciplinary Record reads:

"You are found guilty of violation of Major Rule # 15 (Blocking a Locking Devise [sic] by your own admission. You are to receive (15) days administrative segregation beginning at lock-up tonite."

The decision continues:

"Those testifying were Tony Tyra (including statements of others)."

Therefore, it is clear that the hearing officer (Defendant Heath) considered the statements submitted by plaintiff from other prisoners.

This decision was appealed to Sheriff Harger who denied the appeal stating:

"You were found guilty of violation of Major Rule # 15, (tampering with or attempting to block any locking device). This is by your own admission. Therefore, your appeal is hereby denied and the findings of the hearing officer is upheld."

Plaintiff admits receiving a copy of the decision of the hearing officer, his appeal, and the decision of the Sheriff denying the appeal.

### III.

At the time of the incident, plaintiff was a pretrial detainee in the jail. The rights of pretrial detainees were spelled out in detail in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), where Mr. Justice Rehnquist stated for the Court:

"Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention.... And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into punishment."

\*　　\*　　\*　　\*　　\*　　\*

"Absent a showing of any expressed intent to punish on the part of the detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' ... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment'."

\*　　\*　　\*　　\*　　\*　　\*

"Restraints that are reasonably related to the institution's interest in maintain-

ing jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions. that the detainee would not have experienced had he been released while awaiting trial."

Id. at 537–40, 99 S.Ct. at 1873–75 (citations and footnotes omitted). *See also,* generally, *Lock v. Jenkins,* 641 F.2d 488 (7th Cir. 1981); *Jordan v. Wolke,* 615 F.2d 749 (7th Cir.1980).

Thus the Supreme Court recognized the need for discipline in the institution. The constitutional requirements of such discipline were in turn set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) as follows:

1. Written notice of the charges must be furnished to the prisoner in advance of the hearing.
2. Disclosure must be made to the prisoner of the evidence against him.
3. An opportunity for the prisoner to be heard in person and to present witnesses and documentary evidence.
4. A neutral and detached hearing officer.
5. A written statement by the fact finder of the evidence relied upon and reasons for the decision must be furnished the prisoner.

▪ In 1980, Congress enacted Public Law 96–247, the Civil Rights of Institutionalized Persons Act. Section 7(b)(1) of that Act required the Attorney General to promulgate standards for Grievance Procedure in jails. The requirements of this Act are applicable here. *Owen v. Kimmel,* 693 F.2d 711 (7th Cir.1982). Pursuant to the Act, the Attorney General did promulgate such rules.

The Department of Corrections of the State of Indiana also established standards for the Maintenance of County Jails, including standards for grievance procedure.

The jail rules of the Tippecanoe County Jail, a copy of which is furnished each inmate, contain a Section on Discipline (J, pp. 5–6), and a Section setting forth the Rules of Conduct, including Major Offenses and Minor Offenses (K, pp. 6–7).

These jail rules appear to comply with all requirements set forth by the Supreme Court in *Wolff v. McDonnell, supra,* the standards established by the Attorney General in his Final Rules and Standards for Inmate Grievance Procedure (see # 40.7 of such standards), and the standards established by the State of Indiana. They set out detailed Rules of Conduct (Section K) which list 19 major and 22 minor offenses. Section K–2 lists the maximum punishment for each class of offense. Section J, entitled "Discipline", states the procedure for disciplinary action. It requires:

(a) Prior receipt of a copy of the rules by the prisoner.
(b) Written notice of the offense must be given the prisoner within 24 hours of the offense.
(c) The notice must state a time and place for hearing which shall be more than 24 hours and less than 72 hours thereafter.
(d) The witness shall have the right to appear in person to testify and to present witnesses and documentary evidence.
(e) The hearing officer shall make findings and set the punishment.
(f) A copy of the findings and decision shall be furnished to the inmate.
(g) The hearing officer shall not be the officer filing the complaint.
(h) A complete record is kept of all disciplinary actions. (Section J–3).

These provisions appear to meet or exceed the requirements established by statute and case law. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 874, 74 L.Ed.2d 675 (1983). In addition to those set forth above, an appeal procedure is provided as was done in this case.

▪ The procedure applied to plaintiff complied with all requirements of the jail rules. Plaintiff does not deny that he was aware of the rules. He admits getting a copy of the written charges. He had more than 24 hours' notice of the hearing. He

appeared at the hearing and testified. He presented other written evidence. Although he entered a guilty plea to several charges, he was found guilty of only one (Major Offense #15, Tampering with or blocking any locking device). The maximum penalty for this was 30 days administrative segregation (Section K–2, P. 6.), but he received a sentence of only 15 days administrative segregation. He was given a written decision which stated the charges, evidence, his plea, the witnesses and decision. He appealed, and received a written decision on his appeal.

■ It is clear that the above complied with all requirements of procedural due process as well as of the jail rules. Further, the penalties assessed here were less severe than they might have been. It should be noted that the charge to which plaintiff entered a plea of guilty and upon which he was sentenced, viz., "blocking a locking device", is a very serious one. It can lead to escape and riot. It is a direct threat to jail security, and if it were to result in burning out the electric motors controlling the doors, it could endanger the lives of all inmates. Thus, the punishment was not disproportionate to the offense. *Madyun v. Franzen,* 704 F.2d 954 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

The charges in this case were much more detailed and specific, the procedure more documented, the opportunity given the prisoner to respond greater, and the punishment less severe than that approved in *Jackson v. Carlson,* 707 F.2d 943 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983). It appears that some of the plaintiffs in that case were alleging that others were guilty of the charges for which they were convicted. 707 F.2d at 947. However, Judge Posner ignored these allegations and decided the matter on the basis of whether the evidence supported the guilt of the prisoner. This reasoning applies with equal force to this case regarding plaintiff's allegations that others, as well as he, blocked the door, but because they were not charged, plaintiff should be acquitted.

Charges were filed by Sergeant Cordell only against plaintiff. Therefore, the only issue in his disciplinary proceeding was his guilt (which he admitted) not the guilt of other prisoners. If there was selective prosecution, plaintiff's complaint was against Jailer Breitweiser who is not a defendant in this case. Pursuant to Section 2 of the Jail Rules (pp. 7–8), plaintiff had a right to file a written grievance against Mr. Breitweiser. He availed himself of this right on April 18, 1983, by filing formal charges of harrassment against Rick Breitweiser. These charges were investigated by the Sheriff. Mr. Breitweiser resigned effective April 30, 1983.

Because plaintiff has shown no violation of any constitutional right in the disciplinary proceeding by any of these defendants, summary judgment is appropriate.

### IV.

■ Assuming *arguendo* that Mr. Brietweiser deliberately reported only plaintiff's misconduct, and not that of other inmates, plaintiff has still stated no claim against these defendants for the simple reason that the doctrine of *respondeat superior* does not apply to actions under 42 U.S.C. § 1983. *Monell v. Dept. of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Adams v. Pate,* 445 F.2d 105, 107 (7th Cir.1971). *See also Iskander v. Village of Forest Park,* 690 F.2d 126 (7th Cir.1982) ("Section 1983 will not support a claim based on *respondeat superior* theory of liability.") Thus, there must be a showing of *personal* wrongdoing on the part of the named defendant(s). *McDonald v. State of Illinois,* 557 F.2d 596, 601, 602 (7th Cir.), *cert. denied,* 434 U.S. 966, 98 S.Ct. 508, 54 L.Ed.2d 453 (1977). *Accord, see Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981); *Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983).

■ While *Duncan v. Duckworth* and *Wellman v. Faulkner, supra,* stand for the proposition that certain presumptions exist *against* dismissing complaints involv-

ing *pro se* complainants who fail to allege personal wrongdoing against named defendants, such presumptions cannot hold where (1) the matter is before the court on a motion for summary judgment, and (2) the factual assertions are uncontroverted. Here, despite warnings from both the court and the defendants, plaintiff has utterly failed to proffer anything to show the existence of a genuine issue of material fact. There being no issues of fact, and the questions of law having been resolved above, the defendants are entitled to summary judgment.

Accordingly, it is now the ORDER of this court that defendants' motion for summary judgment is hereby GRANTED in their favor and against the plaintiff. CASE DISMISSED.